# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Respondent,<br><br>    vs.<br><br>CHRISTOPHER RYAN BUSBY,<br><br>                    Petitioner. | Case No.: 2:15-cr-00353-GMN-NJK<br><br>**ORDER DENYING PETITIONER'S § 2255 MOTION FOR INEFFECTIVE ASSISTANCE OF COUNSEL** |

Pending before the Court is the claim for ineffective assistance of counsel in Petitioner Christopher Ryan Busby's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 Motion"), (ECF No. 184).  The Government filed a Response, (ECF No. 197), to which Petitioner replied, (ECF No. 201).  Additionally, because the Court conducted an evidentiary hearing for Petitioner's ineffective assistance of counsel claim, the parties filed a Joint Hearing Brief, (ECF No. 280).

Because Petitioner fails to establish that counsels' performance was deficient under *Strickland v. Washington*, the Court DENIES Petitioner's § 2255 Motion.

## I.    BACKGROUND

In 2019, Petitioner pled guilty to Count One of the Indictment: receipt of child pornography on his Dell laptop in violation of 18 U.S.C. § 2252(a)(2) and (b). (*See* Mins. Proceedings, ECF No. 113)  Then the Court sentenced Petitioner to custody for 121 months followed by 45 years' supervised release after finding him guilty of Count One. (*See* J., ECF No. 137); (Mins. Proceedings, ECF No. 135).  In 2021, Petitioner filed the instant § 2255 Motion pro se.  The Court granted the Government's motion for an order deeming the attorney-client privilege waived between Petitioner and the former attorneys he is accusing provided

constitutionally ineffective assistance. (Order, ECF No. 193).  The briefing schedule was then extended to allow attorneys Tony Abbatangelo, Heidi Ojeda, and G. Michael Tanaka to respond to Petitioner's ineffective assistance of counsel claims.  In 2023, the Court entered an Order denying in part, and deferring in part, the § 2255 Motion. (Order, ECF No. 203).  The Court deferred ruling on 12 grounds for ineffective assistance of counsel, scheduled an evidentiary hearing to resolve the remaining grounds, and appointed defense counsel for purposes of the hearing.  An evidentiary hearing was held on June 30 and July 1, 2025, where the Court heard oral argument from Petitioner's counsel and the Government as well as witness testimony from trial counsel Tony Abbatangelo, trial counsel Heidi Ojeda, Petitioner Christopher Busby, then-Prosecutor Elhan Roohani, and Las Vegas Metropolitan Police forensic examiner Matthew Trafford.

## II.    <u>LEGAL STANDARD</u>

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." *See Davis v. United States*, 417 U.S. 333, 344–45 (1974).  To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under section 2255[.]").  Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346.

"The customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *United*

*States v. Miskinis*, 966 F.2d 1263, 1269 (9th Cir.1992) (quoting *United States v. Birges*, 723 F.2d 666, 670 (9th Cir.), *cert. denied*, 466 U.S. 943 (1984) (alteration omitted)).  To prevail on an ineffective assistance of counsel claim, Petitioner must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  Under this analysis, the question is whether "counsel's representation fell below an objective standard of reasonableness;" and the Court's inquiry begins with a "strong presumption that counsel's conduct [falls] within the wide range of reasonable representation." *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987) (as amended).  "[T]he standard for judging counsel's representation is a most deferential one" because "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105.  To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").  A court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).  Moreover, a petitioner must allege facts—not conclusory allegations—to warrant relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

## III.    **DISCUSSION**

Petitioner filed the instant § 2255 Motion pro se, arguing that vacatur of his sentence is warranted for numerous reasons. (*See generally* § 2255 Mot., ECF No. 184).  Because the

Court entered an Order resolving part of the § 2255 Motion, it need only address the remaining unresolved grounds for Petitioner's ineffective assistance of counsel claim.

Before the Court are 12 remaining grounds for Petitioner's ineffective assistance of counsel claim: Grounds 1, 3, 5, 6, 7, 7(a), 8, 9, 10, 11, 12, and 17. During the evidentiary hearing, Petitioner's counsel conceded that many of the grounds were improperly alleged, and attempted to reframe the issue before the Court by arguing that Petitioner did not enter his plea knowingly. Petitioner's assertion of a legal claim not included in the § 2255 Motion would generally be improper, but because the Government had an opportunity to respond to these arguments at the hearing, the Court finds it fair to consider them. Moreover, because the Court must construe a pro se litigant's filings liberally, it provides some latitude to Petitioner and will consider the merits of his argument that he entered an involuntary plea as it relates to his existing ineffective assistance of counsel claim. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[C]ourts must construe pro se pleadings liberally."). The Court takes up each ground for ineffective assistance in turn.

**A. Ground 1**

In Ground 1, Petitioner alleges that his trial counsel, Heidi Ojeda, was infective when she failed to investigate the facts of his case and advise him about potential trial defenses. (Joint Hr'g Br. 2:24–25, ECF No. 280). Petitioner specifically takes issue with Ojeda's failure to investigate the unallocated space on the Dell laptop's hard drive through a forensic examiner and her failure to reveal that Petitioner did not own the Dell laptop. (§ 2255 Mot. at 163).

The Court begins by discussing whether Ojeda's failure to investigate the unallocated space on the Dell laptop constitutes deficient performance. "Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software." *United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011). Ojeda testified that prior

to her appointment, Petitioner had already admitted to the Government in proffer sessions that his computer was used by third parties (including his male escort clients) to roleplay the pornography on his computer, and he regularly cleaned his computer by deleting the pornography videos from it monthly. (*See* Proffer Session Tr. at 199, Gov't. Hr'g Ex. 12). Petitioner proffered that he "never knew what was underage or not on [his] computer." (*Id.*).  It is, therefore, no surprise that Las Vegas Metropolitan Police forensic examiner Matthew Trafford found child pornography in the unallocated space (*i.e.* the space containing deleted videos). (*See generally* Trafford Forensic Report, Gov. Hr'g Ex. 7).  Petitioner's proffer session admissions gave Ojeda no reason to continue to pursue investigating this fact given that Petitioner was on track to enter a guilty plea.  At the evidentiary hearing, Ojeda testified that she contacted a computer forensic expert, retained the expert's information in Petitioner's file, but did not ultimately need to hire him.  Ojeda testified that had the case gone to trial, she would have hired a forensic expert to investigate the Dell laptop further, but again did not do so because the case was heading towards a guilty plea.

The Court finds that Ojeda made a reasonable strategic decision to forego hiring a forensic expert given Petitioner's multiple prior proffers and his decision to plead guilty. *Harrington*, 562 U.S. at 104 ("Strategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness.").  Thus, Ojeda's decision to not investigate the unallocated space on the Dell laptop does not constitute deficient performance. Petitioner therefore fails to meet his burden of proving ineffective assistance for her failure to investigate the unallocated space on the Dell laptop.[1]

Next, the Court considers whether Ojeda was ineffective for failing to investigate whether Petitioner owned the Dell laptop.  During a proffer session, prior to Ojeda being

---

[1] Because the Court finds that Petitioner fails to meet his burden of proving deficient performance, the Court "need not examine the existence of prejudice." *Engle*, 456 U.S. at 134 n.43.

appointed as his counsel, Petitioner admitted that his laptop was used by his male escort clients for downloading pornographic images depicting young boys or boys without pubic hair who looked young. (Proffer Session Tr. at 190, 191, 194, 199, Gov't. Hr'g Ex. 12).  Moreover, Ojeda testified that she spoke to one of Petitioner's roommates who identified that the Dell laptop belonged to Petitioner.  Trafford's forensic report also concluded that the Dell laptop was owned and operated by Petitioner.  Trafford bookmarked 80 files on the Dell laptop to show ownership of the computer, including dozens of images of Petitioner and his personal documents. (Trafford Forensic Report at 172, Gov. Hr'g Ex. 7).  Although Trafford also found documents in the name of Vincent Marrella on the Dell laptop, he testified during the evidentiary hearing that the overwhelming majority of the documents found on the Dell laptop belonged to Petitioner.  Moreover, the usernames and email addresses saved onto the Dell laptop, as well as the saved autofill fields, indicate that Petitioner owned and operated it to conduct both personal and professional business. (Trafford Forensic Report at 174–176, Gov. Hr'g Ex. 7).  Thus, the Court finds that Ojeda made a reasonable strategic decision to not investigate whether Petitioner owned and operated the Dell laptop because Petitioner had already claimed ownership of the Dell laptop, his roommate confirmed that he owned the laptop, and because Trafford's forensic report put forth well-supported conclusions connecting Petitioner to the Dell laptop.  Accordingly, this decision does not constitute deficient performance and Petitioner fails to meet his burden of proving ineffective assistance.

In sum, Petitioner fails to meet his burden of proving constitutionally ineffective assistance of counsel as to Ground 1.  Thus, Ground 1 is DENIED.

**B. Ground 3**

In Ground 3, Petitioner argues that Ojeda should have objected at the change of plea hearing when Petitioner displayed signs of confusion and hesitancy that he argues demonstrate he was not entering the plea knowingly. (Joint Hr'g Br. 8:14–20).  He further contends that

appellate counsel G. Michael Tanaka was ineffective for failing to raise this argument on appeal. (Not. re Grounds 2:3–4). In the Court's Order denying in part, and deferring in part, the § 2255 Motion, the Court determined that it could not make a merits decision on this ground because the record was inadequately developed. (Order Den. & Deferring § 2255 Mot., ECF No. 203). The Court therefore scheduled the evidentiary hearing to develop the record. At the evidentiary hearing, Petitioner failed to present any evidence to support his claim against Tanaka, despite being informed that the record was undeveloped. Thus, having given Petitioner the chance to develop the factual record against Tanaka, and him failing to do so, the Court finds that Petitioner has failed to meet his burden. Accordingly, ground 3 is denied as to Tanaka.

The Court now turns to this ground as alleged against Ojeda. At the change of plea hearing, Petitioner was sworn to answer the Court's questions truthfully. When asked by the Court: "do you understand that you have just sworn to tell the truth which means that your answers to my questions will be subject to the penalties of perjury if you do not answer truthfully?" Petitioner responded, "Yes." (Change of Plea ("COP") Tr. 3:1–5, ECF No. 153). The Court then proceeded with its Rule 11 colloquy and Petitioner indicated that no one had threatened, forced, or coerced him into pleading guilty. (*Id.* 19:21–20:9).

With respect to the charges before him, the Court questioned Petitioner as follows:

THE COURT: So have you been provided with a copy of the charges against you?

THE [PETITIONER]: Yes, I have.

THE COURT: And do you read, write and understand the English language?

THE [PETITIONER]: Yes, I do.

THE COURT: And do you feel that you understand the charges?

THE [PETITIONER]: Yes.

. . .

THE COURT: So you are charged in Count One of the Indictment with receipt of child pornography, violation of Title 18 United States Code, Section 2252(a), Subsection (A)(2). It is a crime for a person to knowingly receive or distribute any material that contains child pornography that is mailed or using any means or facility or interstate or foreign commerce, has been shipped or transported in or affecting interstate or foreign commerce by any means including by computer. There are three elements to this offense. The first one is that you knowingly received child pornography or material which contained such child pornography. The second element is that the visual depictions have been mailed and/or shipped and or transported in interstate commerce, including by computer. And the third element is that you knew that the visual depiction containing the material showed a minor engaged in sexually explicit conduct. So do you understand that this is what the Government would have to prove beyond a reasonable doubt in order for you to be convicted of this offense?

THE [PETITIONER]: Yes.

(*Id.* 3:6–14; 3:19–4:15).

The Court then determined that Petitioner was competent before Elhan Roohani, the prosecutor assigned to the case, described the essential terms of the plea agreement, including who the agreement binds, the offense charged, and where to reference the facts supporting the guilty plea:

MS ROOHANI: This Plea Agreement will bind Mr. Busby and the United States Attorneys Office in this District. It does not bind your Honor, any prosecuting, administrative or regulatory authority or the Probation Office.

Mr. Busby is knowingly and voluntarily agreeing to plead guilty to the criminal Indictment that was filed on December 16th, 2015 charging him with one Count of receipt of child pornography in violation of Title 18 United States Code, 18 Section 2252(a), Subsection (A)(2).
. . .

The plea agreement includes elements of the offense which your Honor has gone through with him, as well as the facts supporting the guilty plea that begin at the bottom of Page 3 and continue to the top of Page 6.

(*Id.* 9:10–18; 10:3–6).

The Court then confirmed that Petitioner understood the terms of his plea agreement and had adequate time to discuss his case with Ojeda:

> THE COURT: Mr. Busby, do you feel that you understand the terms of your plea agreement?
>
> THE [PETITIONER]: Yes, I do.
> . . .
>
> THE COURT: And, Mr. Busby, are you satisfied with the legal representation that your attorney has provided to you so far?
>
> THE [PETITIONER]: Yes, I am.
>
> THE COURT: Have you had sufficient time to discuss your case with her?
>
> THE [PETITIONER]: Yes.

(*Id.* 13:18–20; 14:4–10).

Next, the Court explained the application of the sentencing guidelines to Petitioner and confirmed that he had discussed them with counsel and understood the role of the Judge, the Presentence Investigation Report ("PSR"), and the general nature of the sentencing process. After Petitioner waived his right to not testify, the Court asked Petitioner questions to establish the factual basis for his guilty plea:

> THE COURT: So it says here that: "On January 16th of 2015 a detective with the Metropolitan Police Department was able to download two video files containing child pornography. One was a video of a 1-year-old female child lying on a bed with an adult male rubbing his erect penis on the female child's exposed vagina and ejaculating on the child's stomach. And the second video was of an adult male forcing his erect penis into the mouth of the 1-year-old, and that the IP address for the child pornography returned an address of 7051 Jasmine Creek Way, Las Vegas, Nevada 89119. And that when they obtained a search warrant for that Jasmine Creek address they spoke with two residents of the home who indicated that you resided in the downstairs bedroom and was in the process of being evicted. A laptop was recovered from that downstairs bedroom where you were residing and 35 child pornography videos downloaded from the Ares, A-R-E-S, peer-to-peer program were located, as well as search key words tarpa boys, bitty boys, young boys, little boys, baby porn, kid hardcore and dad and son, and that you were the

sole owner of the computer." And also found were the two downloaded files that the Detective had located earlier. Is that a true and correct factual statement?

THE [PETITIONER]: Yes.

(*Id.* 20:18–22).

Then the alleged point of confusion that Petitioner relies on for this ground occurred:

THE COURT: Is there anything in there that's not entirely true?

THE [PETITIONER]: That computer **was mainly in my possession**, but I was not the sole owner and sole user of that computer.

THE COURT: Were you the person that downloaded the 35 child pornography videos that were located on that laptop?

(Counsel confers with Defendant)

THE [PETITIONER]: No, I am not, but **I am aware that they are there**.

THE COURT: Ms. Roohani, is that sufficient for you?

MS. ROOHANI: No, your Honor.

THE COURT: Do you have any other information?

MS. ROOHANI: Your Honor, perhaps we could ask him if he downloaded any of the child pornography videos, that would be sufficient to make a Factual Basis for the plea.

THE COURT: All right. Were there any of those child pornography videos that you downloaded?

THE [PETITIONER]: **I knowingly received the videos**.

THE COURT: All right, well, the elements are that he knowingly received child pornography videos, and he says he knowingly received the videos. Did you -- when you received the videos did you know that they were child pornography?

THE [PETITIONER]: Yes.

THE COURT: Ms. Roohani?

MS. ROOHANI: Your Honor, I believe that's sufficient for a Factual Basis for this plea.

THE COURT: All right. Well, the Court finds that the elements of this particular offense have been met by the facts provided in the plea agreement and the Defendant's statement here in Court. Since you do, in fact, acknowledge that you are guilty as charged in the Indictment and you are aware of your right to a trial, what the maximum punishment is I will accept your guilty plea conditionally.  It is the finding of this Court in the case of the United States versus Christopher Ryan Busby that the Defendant is fully competent and capable of entering an informed plea.  His plea of guilty is knowing and voluntarily supported by an independent basis of fact containing the essential elements of the offense charged.

(*Id.* 21:23–23:14).

The Court begins with the baseline that statements made during a plea hearing are entitled to a strong presumption of veracity in later attacks on the plea. *United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008).  Despite Petitioner's testimony that he understood the terms of his plea agreement and pled guilty to the essential elements of Receipt of Child Pornography, he now claims that he did not enter the plea knowingly.  Moreover, he testified in Court at the evidentiary hearing that he committed perjury during the change of plea hearing. Petitioner testified that he lied to the Court when he pled guilty to the crime and maintains that he is innocent of the offense.  He said he was "coached" by Ojeda to admit the essential elements of the offense charged (*i.e.* that he knowingly received the videos), even though he refused to admit that he personally downloaded the videos.  Petitioner testified that he only pled guilty so that he could testify in another case.

Despite Petitioner's argument otherwise, the record establishes that Petitioner's decision to plead guilty was an informed, knowledgeable, and a voluntary act.  The change of plea hearing was complete and thorough, and there is no contention otherwise by Petitioner.  Such completeness strongly suggests that Petitioner comprehended the plea agreement, including the offense charged as outlined during the hearing. *See United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir. 2003).  During the plea proceeding, Petitioner stated under oath that he

1    understands the charges brought against him and had sufficient time to discuss the facts of his

2    case and his decision to enter a plea with his counsel.  He confirmed that he had read the entire

3    plea agreement and understood its terms.  Such declarations made in court and under oath carry

4    a strong presumption of veracity and are sufficient to establish that Petitioner entered the plea

5    agreement knowingly and voluntarily. *See United States v. Rubalcaba*, 811 F.2d 491, 494 (9th

6    Cir. 1987); *United States v. Peterson*, 995 F.3d 1061 (9th Cir. 2021).

7        During the change of plea hearing, Petitioner admitted that he received the videos on the

8    laptop he mainly possessed and knew the videos were child pornography.  Although Petitioner

9    now claims that he lied during the change of plea hearing, this does not make his knowing and

10   voluntary guilty plea otherwise invalid and does not serve as a sufficient basis for his

11   ineffective assistance of counsel claim. *See, e.g., United States v. Ieremia*, No. CR 16-00744

12   (01) DKW, 2018 WL 3615979, at *9 (D. Haw. July 27, 2018) (finding that a defendant's

13   decision to lie when pleading guilty does not render his guilty plea involuntary).  Thus, the

14   Court finds that Ojeda's performance was not deficient for the reasons Petitioner asserts and

15   DENIES Ground 3.

16   **C. Ground 5**

17       In Ground 5, Petitioner alleges that Ojeda was ineffective for failing to seek a 2-level

18   reduction under U.S.S.G. § 2G2.2(b)(1), which applies when a defendant's offense did not

19   involve intent to traffic, distribute, or transmit child pornography. (Joint Hr'g Br. 13:20–21).

20   Petitioner's § 2255 Motion states that the indictment and plea agreement contain no allegations

21   or admissions that Petitioner intended to distribute child pornography. (§ 2255 Mot. at 181–

22   185).  Petitioner further contends that Ojeda's failure to advocate for this reduction was

23   unreasonable and prejudicial, as it likely increased the length of his sentence. (*Id.* at 185).

24       During the evidentiary hearing, Ojeda testified that she did discuss a reduction under

25   U.S.S.G. § 2G2.2(b)(1) with the Government, but the Government was not willing to agree to

the reduction.  As a result, a reduction was not incorporated into the plea agreement.  Ojeda further testified that she could not seek reductions outside the bounds of the agreed upon plea agreement because Petitioner signed a plea agreement that was binding on the parties which stated: "The parties stipulate and agree to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions." (2019 Plea Agreement 6:18–21, ECF No. 114).  Ojeda testified that if she objected to the plea agreement and sought a 2-level reduction under U.S.S.G. § 2G2.2(b)(1), she would have been in breach of the plea agreement and the effects of the breach would be detrimental to Petitioner.

The Court agrees that Ojeda could not seek reductions once the plea agreement was entered into, and thus finds her decision to not seek a reduction at sentencing was not deficient performance.  The Court also finds that Ojeda did seek a 2-level reduction under U.S.S.G. § 2G2.2(b)(1), contrary to Petitioner's assertion, when she asked the Government for the reduction during plea negotiations.  Thus, Petitioner has failed to meet his burden of establishing deficient performance and Ground 5 is DENIED.

**D. Ground 6**

In Ground 6, Petitioner argues that trial counsel Tony Abbatangelo and Ojeda were ineffective for failing to investigate and present an alibi defense. (Joint Hr'g Br. 15:6–7).  First, both Abbatangelo and Ojeda testified that they investigated an alibi defense.  When asked whether he investigated the case, Abbatangelo testified that he would have spoken with any person that the Petitioner asked him to speak with.  But Abbatangelo also testified that Petitioner's concern at the time was mainly focused on getting out of custody.  As for Ojeda, she testified that she tasked an investigator with interviewing three people, most of whom were Petitioner's roommates or friends, and talked with anyone she thought would be helpful to put

forward a possible defense.  Thus, the Court finds that Abbatangelo and Ojeda both investigated an alibi defense and that their performance was therefore not deficient on this basis.

Second, Abbatangelo and Ojeda were not ineffective for failing to present an alibi defense because it would have been an unsuccessful strategy.  Here, even if Abbatangelo and Ojeda were able to prove beyond a reasonable doubt that Petitioner was not at his residence on the date and time Detective Cody downloaded the child pornography from the IP address, such a showing would have no bearing on the validity of those downloads and the probable cause developed by Detective Cody to procure a search warrant for the IP address where the child pornography was coming from.  As Trafford testified at the evidentiary hearing, Ares is a file sharing program that allows users to search for material and pull files or videos from Ares accounts on other people's computers so long as the other computer is on.  Trafford explained that it is not necessary for a person to be physically behind the computer clicking and sharing a file or video at the moment Detective Cody was able to download the files.  Trafford further testified that the computer simply must be on (including asleep), connected to Wi-Fi, and have the Ares file sharing program running in the background.  Thus, an alibi would not have been a defense to the offense of Receipt of Child Pornography because Detective Cody could download child pornography from the IP address without Petitioner being physically present behind the computer screen at that same moment so long as the computer was turned on, connected to Wi-Fi, and had Ares running in the background.  Accordingly, Abbatangelo and Ojeda were not ineffective for failure to present an alibi defense. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").  Accordingly, Ground 6 is DENIED.

**E. Ground 7**

Busby alleges that Ojeda was constitutionally ineffective for failing to investigate and challenge the PSR's assignment of criminal history points. (Joint Hr'g Br. 16:23–24). Petitioner contends that Ojeda misrepresented that he had zero criminal history points and would therefore qualify as Criminal History Category I, when he in fact was in Criminal History Category II.

Ojeda testified that she informed Petitioner that she anticipated, but did not guarantee, that his criminal history category would likely be Category I. At the change of plea hearing, where the Court accepted Petitioner's guilty plea, Petitioner had not yet been arrested for the state offense, nor was Ojeda aware of the state investigation or upcoming charge that would remove Petitioner from a Criminal History Category I to a Criminal History Category II. Moreover, Ojeda testified at the evidentiary hearing that she is trained to avoid letting a client plead guilty in a state court proceeding while a federal court case is pending so that a defendant's criminal history points and criminal history range do not increase. She further testified that when Petitioner was arrested for the state crime, she was only able to communicate with Petitioner's parents and his state court attorney. She explained that she told Petitioner's parents that Petitioner should not plead in state court. Despite her admonition, Petitioner was adamant about resolving the state court case first so he could be released from state custody and ultimately pled guilty against Ojeda's legal advice which impacted his criminal history category. Between the two options, Petitioner made his preferred choice and was released from state custody.

In addition, the plea agreement signed by Petitioner states: "Defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. *The Court will determine* the defendant's criminal history category under the sentencing guidelines." (2019 Plea Agreement 8:17–20, ECF No. 114) (emphasis added). At

the change of plea hearing, Petitioner affirmatively acknowledged that no one made any promises to him about what his sentence would be. (COP Tr. 20:10–12). He also stated that he understands that the Court will not be able to determine his sentencing guideline range until after the probation office has completed its PSR. At the same hearing, the Court informed Petitioner that he could make objections to the PSR. At sentencing, Petitioner confirmed that he had thoroughly discussed the PSR with Ojeda, and that he had no other objections for the Court to consider. The Court is entirely unconvinced with Petitioner's arguments in this ground because at multiple points throughout Petitioner's criminal proceedings, he confirmed that he understood how sentencing worked and acknowledged that no one, which includes Ojeda, had made promises to him. Thus, the Court finds that Petitioner was informed that the Court, not Ojeda, would ultimately determine his criminal history category and understood that his category would not be determined until closer to sentencing and that he could make objections to the PSR. Most importantly, he testified that no one had made promises to him about his sentence.

The Court finds that Ojeda was not ineffective for failing to give advice based upon facts that had not occurred or information she was unaware of prior to signing the guilty plea agreement and entering a change of plea. Nor was Ojeda ineffective for failing to make any objections related to Petitioner's criminal history category because such objections would have been meritless. Thus, Ground 7 is DENIED.

**F. Ground 7a**

Ground 7a is a cumulative argument relating to Petitioner's state court case. This ground contends that Ojeda was ineffective because she: (1) failed to present or litigate objections to the PSR despite Petitioner's express requests that she challenge both factual and scoring issues; (2) affirmatively misinformed Petitioner about his criminal history category; and

(3) took affirmative steps to interfere with Petitioner's efforts to withdraw his plea in state court. (*See* § 2255 Mot. at 192–98). The Court addresses each sub-ground below.

First, Petitioner asserts that Ojeda failed to present or litigate objections to the PSR, despite his express requests that she challenge both factual inaccuracies and improper scoring. He claims that had Ojeda reviewed the PSR with him and raised the appropriate objections, the Court might have calculated a lower guidelines range. (Joint Hr'g Br. 17:22–26). The Court denies this sub-ground to the extent that Petitioner realleges claims in Ground 7. To the extent that Petitioner raises additional arguments, the Government argues that Ojeda made any objection that she believed had merit. (*Id*. 18:16–17). Indeed, Ojeda stated that she "received [Petitioner's] objections to the PSR and filed the objections she believed were appropriate." (Ojeda's Resp. 5:21–22, Ex. 1 to Resp., ECF No. 197-1). Moreover, at the evidentiary hearing, Ojeda testified that prior to sentencing she clarified to the Court the areas of the PSR that Petitioner found discrepancies with. The Court has reviewed the § 2255 Motion for the objections Petitioner wanted to raise, reviewed the hearing transcript, and finds that Ojeda's failure to raise the objections Petitioner wanted constituted a reasonable strategic decision and was not deficient. Thus, this sub-ground claim is DENIED.

Second, Petitioner alleges that Ojeda affirmatively misinformed him about his criminal history category. (Joint Hr'g Br. 18:1–2). For the reasons discussed in Ground 7, this sub-ground claim is DENIED.

Third, Petitioner alleges that Ojeda took affirmative steps to interfere with his efforts to withdraw his plea in state court. (*Id.* 18:6–7). He alleges Ojeda contacted the attorney representing him on state charges and convinced him not to help Petitioner withdraw his plea, thereby sabotaging his attempt to assert his rights and achieve lower criminal history points for sentencing in federal court. (*Id.* 18:7–9). He claims that this interference, coupled with the misadvise regarding sentencing exposure, prejudiced his ability to make an informed and

voluntary decision to plead guilty. (*Id.* 18:9–11). During the evidentiary hearing, Ojeda testified that she recalls discussions around Petitioner wanting to withdraw his state guilty plea, so she emailed the Government and Probation Office the day before federal sentencing to give them notice of this potential change. Ojeda testified that she does not recall ever having a conversation with Petitioner's state court attorney telling him not to let Petitioner withdraw his guilty plea. Petitioner's Counsel did not further press Ojeda to go into the specific content of her communications with Petitioner's state court defense attorney. Nor did Petitioner call his state court attorney as a witness to offer testimony related to this claim even though he was allegedly privy to this conversation between himself and Ojeda. Petitioner also did not offer any testimony himself about this claim during the evidentiary hearing. Thus, the Court finds that the available testimony establishes that Petitioner has failed to meet his burden of proving Ojeda was constitutionally ineffective as it relates to this sub-ground. Thus, this sub-ground claim is DENIED, and Ground 7a as a whole is DENIED.

### G. Ground 8

In Ground 8, Petitioner alleges that Abbatangelo and Ojeda were ineffective for failing to file a motion to suppress evidence found on the HP laptop[2] that was seized not from Petitioner's residence, but later when he was arrested in December 2015. (Joint Hr'g Br. 20:11–12).

At the evidentiary hearing, Abbatangelo testified that he did not recall any discussion with Petitioner regarding a motion to suppress evidence on the HP laptop. He further explained that he only files motions that have merit. Because strategic decisions are entitled to a strong presumption of reasonableness, the Court finds that Abbatangelo's decision to not file a motion to suppress does not constitute deficient performance. *See Harrington*, 562 U.S. at 104.

---

[2] The laptop seized in the Petitioner's residence containing child pornography was a Dell laptop.

As for Ojeda, she testified that she identified a standing issue which would preclude her from filing a motion to suppress evidence on the HP laptop. A decision not to file a motion to suppress is not deficient when a petitioner lacks standing to challenge the search. *James v. Borg*, 24 F.3d 20 (9th Cir. 1994). Moreover, Ojeda testified that if she filed a motion to suppress, the plea agreement offer would have been withdrawn. In addition, in the unlikely event that a motion to suppress the HP laptop was granted, Ojeda testified that the Court could still consider the evidence found in the HP laptop at sentencing even if it was suppressed. The Court agrees. *See e.g., United States v. Kim*, 25 F.3d 1426, 1435 & n. 8 (9th Cir.1994) (admitting evidence from illegal search and seizure at sentencing); *see also United States v. Acosta*, 303 F.3d 78, 86 (1st Cir. 2002) (explaining that "ten other circuits have ruled that in most circumstances, the Fourth Amendment exclusionary rule does not bar the introduction of suppressed evidence during sentencing proceedings."). Lastly, Roohani testified that the Government informed Ojeda it did not intend to charge Petitioner based on the HP laptop, which further strengthens Ojeda's decision to not file a motion to suppress evidence on the HP laptop. Because the Court finds that the four reasons given to support Ojeda's decision not to file a motion to suppress are valid, Petitioner fails to meet his burden of proving that Ojeda's performance was deficient for failing to file a motion to suppress. Accordingly, Ground 8 is DENIED.

**H. Ground 9**

In Ground 9, Petitioner argues that Ojeda rendered ineffective assistance by failing to object to several sentencing enhancements under U.S.S.G. § 2G2.2(b)(2), (b)(4), and (b)(7)(B), which he contends were applied without adequate evidentiary support or legal justification. Petitioner asserts that these enhancements resulted in a significantly higher advisory guidelines range and ultimately a longer prison sentence.

During the evidentiary hearing, Petitioner's counsel conceded that Ground 9 "flat out just do[esn't] make a lot of sense"[3] and asked the Court to construe the pro se § 2255 Motion liberally.  Petitioner's counsel argued that the heart of this improperly alleged ground boils down to an argument for failing to enter the plea knowingly and intelligently.  The Court disagrees.

Petitioner signed two virtually identical plea agreements (one while represented by Abbatangelo and the other while represented by Ojeda) which both state that "[t]he parties stipulate and agree to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions." (2019 Plea Agreement 6:18–21).[4]  The plea agreements then listed U.S.S.G. § 2G2.2(b)(2), (b)(4), and (b)(7)(B) under the agreed enhancements section. (*Id.* 7:3–7).  Thus, two different attorneys separately explained to Petitioner these same terms in his guilty plea agreement.  Moreover, there is sufficient evidence throughout the record to establish that the enhancements were properly applied based on Petitioner's conduct.  Petitioner's argument that he did not knowingly enter the plea agreement as it relates to this ground is unconvincing when it is clear that he signed the plea agreements after being advised by two separate attorneys and testified in court at the change of plea hearing that he understood its terms.  Thus, Petitioner has failed to meet his burden to establish that Ojeda's performance was deficient or that his plea was involuntary.  Accordingly, Ground 9 is DENIED.

---

[3] Counsel is correct.  If Ojeda had objected to these enhancements at the change of plea hearing, Petitioner and Ojeda would have been in violation of the plea agreement which would have resulted in negative consequences for Petitioner.

[4] The first plea agreement Petitioner signed was not docketed because the change of plea hearing did not occur due to Petitioner's medical situation.  The Court therefore does not provide a citation to the 2017 plea agreement.  The Court maintains the 2017 plea agreement in its records and attests that it contains the same quoted language as the 2019 plea agreement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## I.  Ground 10

Petitioner argues that Ojeda was ineffective for not objecting at sentencing to certain statements the Government made in its Response Memorandum and at sentencing. (§ 2255 Mot. at 216).  He asserts that these statements contained facts not within those stipulated in the plea agreement and were protected under his separate "cooperation" agreement with the government. (§ 2255 Mot. at 216).  Petitioner alleges that he signed "a contract" while he was represented by Abbatangelo upon counsel's explicit representation that Petitioner's comments to the Government could not and would not be used against him for any charges or relevant conduct at sentencing. (Joint Hr'g Br. 25:8).  Petitioner does not specify which comments were part of this contract nor who the contract was with, but the Court believes Petitioner is referring to an alleged proffer contract between himself and the Government.  He further alleges that the Government breached the alleged contract by claiming at sentencing that Petitioner admitted to watching child pornography and attending pedophile sex parties, neither of which is included among the facts stipulated in the plea agreement.

To begin, if Petitioner is referring to a contract that is not one of the proffer agreements, he does not provide the Court with a copy of this alleged contract to review.  Further, no testimony was given about contracts, other than proffer agreements, at the evidentiary hearing. Moreover, the plea agreement that was signed by Petitioner states that no such contract exists. (2019 Plea Agreement 20:2–8).  But beyond that, in the Joint Hearing Brief, the Government explains that the statements made during sentencing that Petitioner takes issue with were made while explaining to the Court its justification for the generous 5K Motion. (Joint Hr'g Br. 25:18–19).  The Government's statements to support the 5K Motion were reflective of Petitioner's statements during proffer sessions.  Petitioner participated in three proffer sessions with the Government and signed a proffer agreement each time.

Section four of each proffer agreement states, "no statements made. . . by Christopher Busby at the meeting will be used directly against him in any criminal case brought by USAO-NV, except in the event of prosecution for false statements or perjury arising out of the proffer." (*See, e.g.*, Jan. 4, 2018, Proffer Agreement, Gov. Hr'g Ex. 4). However, section five of each proffer agreement states that "the USAO-NV may use Christopher Busby's statements or other information to rebut any evidence or arguments offered by or on behalf of Christopher Busby (including arguments made or issues raised *sua sponte* by the Court) at any stage of the criminal prosecution (including, but not limited, to removal hearing, motion hearing, trial, and sentencing.)" (*Id.*). The Court therefore finds that the Government was permitted to raise that Petitioner admitted to watching child pornography and his statements about zoom pedophile sex parties at sentencing after Petitioner attempted to minimize his involvement during the change of plea hearing. Had Ojeda objected to these statements, it is likely that Petitioner could have lost his 5K Motion reduction, because only the Government can move for such a motion. And as Ojeda testified, any such objections made about the information provided by Petitioner in the recorded proffer sessions could have resulted in the plea agreement being violated. Thus, Petitioner has failed to meet his burden to establish that Ojeda's performance was deficient. Even assuming Ojeda should have made an objection, Petitioner has shown no prejudice because the Court granted the 5K motion and imposed the sentence requested by the parties. Accordingly, Ground 10 is DENIED.

### J. Ground 11

In Ground 11, Petitioner alleges that Ojeda was "extraordinarily ineffective" for not hiring a forensic examiner to examine the contents of the Dell laptop. (§ 2255 Mot. at 218). He again raises questions about ownership of the Dell laptop, whether any evidence on the Dell laptop established that he knowingly downloaded or received the videos, and potential third-party access, among other issues. (*Id.* at 221–24). Because the Court has already determined

that Ojeda was not ineffective for hiring a forensic expert to determine whether Petitioner owned the Dell laptop, despite third-party use/access, the Court will only focus on Petitioner's remaining arguments in this ground.

To begin, strategic decisions—including whether to hire an expert—are entitled to a "strong presumption" of reasonableness. *Harrington*, 562 U.S. at 104.  Defense lawyers have limited time and resources, and they must choose from among countless strategic options. *Id.* at 106–07.  Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.* at 108.  Here, Ojeda testified that she identified a forensic expert but ultimately made the decision to not hire the expert.  Moreover, Petitioner did not hire or present testimony from a forensic expert at the evidentiary hearing to establish prejudice despite his assertion that he would have liked one.  Even more, when asked by the Court at the evidentiary hearing how he believed a forensic expert would be helpful to his case, Petitioner answered that an expert would be able to demonstrate that hundreds of people used his laptop, but he did not know how an expert would actually be able to do that.  Thus, Petitioner has failed to meet his burden of proving that Ojeda was ineffective for failing to hire a forensic expert.  Accordingly, Ground 11 is DENIED.

**K. Ground 12**

Petitioner argues that Ojeda was ineffective for failing to file pretrial suppression motions and that Tanaka was ineffective for failing to make appellate arguments regarding the same. (Joint Hr'g Br. 27:16–17); (Not. re Grounds 2:21–22).  Petitioner did not put forth any evidence at the evidentiary hearing related to Tanaka.  For the reasons stated in Ground 3, Petitioner therefore fails to meet his burden of establishing that Tanaka was ineffective in this ground.

As for Ojeda, Petitioner contends that she was ineffective because she failed to challenge Fourth Amendment violations pertaining to the seizure of both the Dell and HP laptops. He also claims that Ojeda failed to file a *Franks* motion. (Joint Hr'g Br. 27:19–22). Petitioner claims that such a motion should have been made to address the false statements in the search warrant affidavit. (*Id.* 27:21–22). Petitioner claims that the affidavit contained conflicting IP addresses and file downloads from the Dell laptop that the government's expert concluded stopped working a month before Detective Cody downloaded three illegal videos from it. (*Id.* 27:21–23).

First, Petitioner's argument regarding Ojeda's failure to file a motion to suppress the HP laptop is denied for the same reasons stated in Ground 8. Next, as to the argument that Ojeda failed to move for a *Franks* hearing over a discrepancy in the IP address as listed in the search warrant, Petitioner also fails to meet his burden. To obtain a *Franks* hearing, a defendant must do the following: (1) " allege specifically which portions of the warrant affidavit are claimed to be false [or which facts were omitted]"; (2) "contend that the false statements or omissions were deliberately or recklessly made"; (3) include "a detailed offer of proof, including affidavits"; (4) challenge "the veracity of only the affiant"; and (5) show that "the challenged statements [are] necessary to find probable cause." *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. DiCesare*, 765 F.2d 890, 894–95 (9th Cir.1985)).

At the evidentiary hearing, Trafford testified that when Detective Cody drafted the search warrant, she listed an incorrect IP address due to a typographical error when editing over a previous search warrant. But he also testified that the affidavit in support of the search warrant listed the correct IP address. To obtain a *Franks* hearing, the movant must identify which portions of the warrant affidavit are claimed to be false. *Perdomo*, 800 F.2d at 920. Here, the typographical discrepancy was in the search warrant, not the affidavit. Busby does not identify which portion of the affidavit was false, so he fails to meet his burden of proving

that Ojeda's performance was deficient for failing to move for a *Franks* hearing. *See Perdomo*, 800 F.2d at 920; *Rupe*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").  Thus, Ground 12 is DENIED.

### L.  Ground 17

Petitioner argues that Ojeda and Abbatangelo were ineffective for failure to investigate whether Petitioner owned the Dell laptop.  For the reasons discussed in Ground 1, neither Ojeda nor Abbatangelo were ineffective for failing to investigate whether Petitioner owned the Dell laptop.  Moreover, at the change of plea hearing, Petitioner stated the Dell laptop was mainly in his possession, which is consistent with Trafford's findings (photos, usernames, emails, autofill fields, etc. all matching Petitioner).  Thus, Ground 17 is DENIED.

### M.  Ineffective Assistance of Counsel Conclusion

Upon consideration of the § 2255 Motion briefing, live testimony, the supporting and opposing memoranda, the arguments of counsel, the record, and the relevant legal authorities, the Court DENIES Petitioner's § 2255 Motion in its entirety because Petitioner fails to meet his burden of establishing ineffective assistance of counsel under *Strickland v. Washington*. *See* 466 U.S. at 687.

### N.  Certificate of Appealability and Separate Judgment

The Government requests that the Court deny Petitioner a Certificate of Appealability and to direct the Clerk of Court to enter a separate judgment. (§ 2255 Resp. 31:9–10, ECF No. 197).

Petitioners must receive a Certificate of Appealability from the court to proceed with an appeal of a § 2255 Motion Order. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551–52 (9th Cir. 2001).  To warrant a Certificate of Appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2);

*Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  He bears the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 483.  The Court has considered whether each of the issues raised by Petitioner satisfies the standard for issuance of a Certificate of Appealability and determines that none of the issues meet that standard. *See Slack*, 529 U.S. at 483.  The Court therefore DENIES Petitioner a Certificate of Appealability.

"Section 2255 proceedings are governed by procedural rules developed by the Supreme Court and adopted by Congress."  *Kingsbury v. United States*, 900 F.3d 1147. 1149 (9th Cir. 2018); *see also* Rules Governing Section 2255 Proceedings for the United States District Courts.  Those rules provide that judgment must be entered in compliance with Rule 58(a) of the Federal Rules of Civil Procedure.  Under Rule 58, an order that is dispositive of the proceedings is usually insufficient to enter judgment. Fed. R. Civ. P. 58(a).  Instead, judgment must be expressly entered in a "separate document," except when the district court decides certain listed motions—which do not include § 2255 motions. Fed. R. Civ. P. 58(a), (c)(2)(A). Thus, the Clerk of Court is kindly directed to enter separate judgment for this Order.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's § 2255 Motion, (ECF No. 184), is **DENIED**.  The Court **DENIES** Petitioner a Certificate of Appealability.

The Clerk of Court is kindly directed to enter separate judgment for this Order.

**DATED** this __16__ day of July, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court

Page 26 of 26